# EXHIBIT C



April 23, 2024

**VIA CERTIFED MAIL**
**RETURN RECEIPT REQUESTED**

Jon Rolf, Chair
Blake Flanders. President and CEO
Blake Benson
John B. Dicus
Carl Ice
Alysia Johnston
Cynthia Lane
Diana Mendoza
Neelima Parasker
Wint Winter
Kansas Board of Regents
1000 SW Jackson Street Ste 520
Topeka, KS 66612-1368

RE: K.S.A. 12-105b Notice of Claim re Mrs. Darlene Santiago Dotson, Claimant

Dear Mr. Rolf, et al.:

I, along with the Accurso Law Firm, serve as legal counsel to Mrs. Darlene Santiago-Dotson ("Claimant") in connection with various legal claims she is contemplating pursuing against the University of Kansas ("KU") and certain of its employees arising out of and related to the termination of her employment with KU and Kansas University Medical Center. This correspondence is a Notice of Claim filed with KU through its governing board pursuant to K.S.A. 12-105b and provides the following potential tort claim information and notice as required:

Claimant: Mrs. Darlene Santiago-Dotson, 2509 E. 183rd Street. Belton, Missouri 64012

Claimant's Attorney: Kirk D. Holman, Holman Schiavone LLC, 4600 Madison Avenue, Suite 810, Kansas City, Missouri 64112 816.283.8738; Andrew McCue, The Accurso Law Firm, 4646 Roanoke Pkwy Kansas City, Missouri 64112 (816) 561-3900

Factual Basis of Claims: This Notice of Claim encompasses the Kansas tort claims of wrongful/retaliatory discharge against the University of Kansas and its employees who carried out one or more acts in furtherance of such. These claims arise out of, are related to, and the result of KU and these individuals, in clear violation of and contrary to well established Kansas law and public policy, terminating Ms. Santiago-Dotson's employment in retaliation for or response to her repeated, good faith reports of KU and certain of its employees engaging in certain and various unlawful, and/or otherwise improper acts, conduct, and practices. In addition to these



tort claims, Mrs. Santiago-Dotson has other claims she intends to pursue, involving other discriminatory and retaliatory conduct of KU and its employees.

Mrs. Santiago-Dotson served as a very productive and loyal employee of ULHA for over a decade; she consistently displayed genuine concern for a safe and responsible work environment and the lawful treatment of her colleagues and subordinates. During Claimant's employment, and at the time she served as Chief the University of Kansas Medical Center ("KUMC") Division of Public Safety, she hired former Kansas City, Missouri Police Major, Brad Deichler as Shift Commander Captain. On or about March 15, 2022, Lieutenant Commander Tim Gaughan and Deichler informed Captain Don Holland that he would be assigned to A shift, which is nights. On or about March 30, 2022, Deichler reassigned Holland to A shift.

On April 27, 2022, Recruit Officer Arianne Kopp and Cpl. Miranda Lawson, who was training Kopp, received seven (7) blue pills labeled M30 in a biohazard bag from a nurse in the emergency room. They had been recovered from on and around the chair of a patient who had previously run out of the emergency room. The pills were given to Kopp, who was told to scrape a pill to conduct a field test, as part of an apparent hazing scheme. Blue M30 pills are known to contain Fentanyl, which is a known hazardous substance. Cpl. Lawson and Sgt. Crabtree should have been aware of the Fentanyl danger the blue M30 pills possessed before instructing and allowing Recruit Officer Kopp to scrape the pill to field test based in part on the fact that on March 14, 2022, a Weekly Bulletin was emailed to all sworn officers by Det. Weissenbach which referenced a narcotics case from the emergency department related to a bag of 18 blue pills stamped "M30" suspected to be Oxycodone or fentanyl. This was the fourth recovery of blue M30 Pills since the beginning of March 2022 at KU Medical Center. In all three prior cases, the pills were not field tested, and lab results returned as being Fentanyl in all.

Kopp resigned from the police department on June 9, 2022 because of the hazing incident involving fentanyl. Holland had been assigned to question Cpl. Lawson and Sgt. Crabtree as their supervisor. Holland interviewed Cpl. Lawson on June 21, 2022. On or about June 24, 2022, Deichler reprimanded Holland for policy violations. Captain Holland struggled in patrol, particularly holding his subordinates accountable. On or about June 28, 2022, Holland submitted a Memorandum in which alleged mistreatment by Deichler related to his transfer to A shift and the investigation into Holland's involvement in the fentanyl incident.

Holland submitted the documentation of the interviews related to the hazing incident, and it was discovered there were discrepancies in the statements received. Additionally, there was a discrepancy in the events that occurred after the incident involving Capt. Holland and the meetings he had with Major Deichler. As such, an internal investigation involving the entire fentanyl incident was started on or about June 30, 2022. Doug Orbin, an Investigation Specialist within the Department, was assigned to investigate the fentanyl incident.

As a result of the fentanyl incident, Orbin made several findings on or about July 26, 2022 and determined that Holland had engaged in "sustained deception," during the investigation. In addition, Orbin determined that Crabtree, Lawson, and Holland violated several policies and regulations of KUMC-PD. Ms. Stefanie Webb left KU in July 2022, and Mrs. Santiago-Dotson then reported to David Vranicar, Vice Chancellor on or about August 4, 2022. Mrs. Santiago-Dotson told Vranicar of the implications with Holland related the sustained deception finding and requested a meeting with him to discuss.

Mrs. Santiago-Dotson advocated reporting Holland to Kansas Commission on Peace Officers' Standards and Training (KS·CPOST), the authority which issued Holland's police commission because Holland had engaged in conduct as a law enforcement officer which Mrs. Santiago-Dotson believed to unlawful. Chari Young, Vice Chancellor and Chief Human Resources Officer, instructed Mrs. Santiago-Dotson to reprimand Holland and the other two officers involved in the fentanyl incident and instructed Mrs. Santiago-Dotson not to contact KS·CPOST.

Under the Kansas Law Enforcement Act, specifically K.S.A. 74-5611a(2), KS-CPOST establishes and maintains a central registry of all Kansas police officers or law enforcement officers as a resource for all agencies who appoint or elect police or law enforcement officers to use when reviewing employment applications of such officers and includes all records received related to violations of the Kansas law enforcement training act, including, but not limited to, records of complaints received or maintained by KS-CPOST. Under, K.S.A. 74-5616(b)(7), KS-CPOST may suspend, condition or revoke the certification of a police officer or law enforcement officer, reprimand or censure a police officer or law enforcement officer, or deny the certification of a police officer or law enforcement officer who has engaged in unprofessional conduct as defined by rules and regulations of the commission. Under K.A.R. 106-2-3(j)(1) "Unprofessional conduct," pursuant to K.S.A. 74-5616 means: "Intentionally using a false or deceptive statement in any official document or official communication." The internal affairs investigation related to the fentanyl incident involved official documents or official communications within the meaning of K.A.R. 106-2-3(j)(1).

Under K.S.A. 7 4-5616(b)(5), KS-CPOST may suspend, condition or revoke the certification of a police officer or law enforcement officer, reprimand or censure a police officer or law enforcement officer, or deny the certification of a police officer or law enforcement officer who engaged in conduct which, if charged as a crime, would constitute… a misdemeanor crime that the commission determines reflects on the honesty, trustworthiness, integrity or competence of the applicant as defined by rules and regulations of the commission. Under K.A.R., 106-2-2a(a)(35), Pursuant to K.S.A. 74-5616 and amendments thereto, an applicant or officer shall not engage in conduct, whether or not charged as a crime or resulting in a conviction, that would constitute interference with law enforcement, as defined in K.S.A. 2011 Supp. 21-5904 and



amendments thereto. K.S.A. 21-5904(a)(1)(C) provides that Interference with law enforcement is falsely reporting to a law enforcement officer, law enforcement agency or state investigative agency any information, knowing that such information is false and intending to influence, impede or obstruct such officer's or agency's duty. Mrs. Santiago-Dotson is a law enforcement officer within the meaning of K.S.A. 21-5904. The Division of Public Safety of which Mrs. Santiago-Dotson was Chief, is a law enforcement agency or state investigative agency within the meaning of K.S.A. 21-5904.

On or about August 10, 2022, Mrs. Santiago-Dotson and Orbin met with Young, Deichler and Vranicar During the meeting, Mrs. Santiago-Dotson informed Young and Vranicar that she intended to report any formal sustained deception to KS-CPOST and that she did not want anyone blindsided, so she was informing them of her planned course of action. Orbin stated during the meeting that there was no question that Holland had intended to deceive. During the meeting, Mrs. Santiago-Dotson further informed Young and Vranicar that she had called the executive director of KS-CPOST, Doug Schroder, to confirm that the finding of deception should be reported under the Kansas Law Enforcement Act.

Deichler agreed that there had been quite a bit of deception involved but noted the issues Holland was experiencing in his personal life at the time. Mrs. Santiago-Dotson also recommended that Crabtree be demoted over his involvement in the fentanyl incident. Young and Vranicar refused to allow Mrs. Santiago-Dotson to notify CPOST and insisted on a reprimand. On August 10, 2022, Orbin resigned over the lenient treatment of Holland by Vranicar and Young. Young would not support more severe discipline for Holland for fear he may allege discrimination within the department due to his claims made in June. Ultimately, Major Deichler issued an REGD (i.e., a written warning) to Holland for the fentanyl incident and reassigned him to the day shift effective on or about August 15, 2022.

On Monday, August 23, 2022, Vice Chancellors Vranicar and Young informed Mrs. Santiago-Dotson she was placed on paid administrative leave. Vranicar told Plaintiff that she was not required to report Holland to KS-CPOST. Vranicar then noted Holand's race, age, and health and suggested that a report to KS-CPOST could be viewed as discriminatory. On or about September 28, 2022, Plaintiff was informed of her termination by Vranicar due to alleged loss of confidence in her ability to lead the department based on analysis conducted during her leave.

Vranicar and Young, and other KU employees involved in Mrs. Santiago unlawful termination had full knowledge of her reports of what she in good faith perceived to be unlawful conduct related to Holland. Likewise, these individuals took part in and/or had significant influence with respect to the related decision-making process. The reasons given by KU for Mrs. Santiago-Dotson's termination are pretextual.



The related acts, conduct, and practices of KU and its employees who carried out those acts in furtherance of such were done willfully, wantonly, and maliciously, and with full knowledge of the unlawfulness of such. All acts, conduct, and practices at issue arose out of and were carried out by the respective KU employees during the course of their duties as KU employees in their respective capacities and involved no discretionary functions or duties.

Employees Involved: The employees known and/or believed to be involved include: **David Vranicar**, University of Kansas Medical Center, 2032 Murphy Administration Building, Mail Stop 2015, 3901 Rainbow Boulevard. Kansas City, KS 66160; **Chari Young**, University of Kansas Medical Center, 2032 Murphy Administration Building, Mail Stop 2015, 3901 Rainbow Boulevard. Kansas City, KS 66160; **Brad Deichler**, University of Kansas Medical Center Public Safety Department, Mail Stop 1004. 2100 West 36th Avenue, Kansas City, KS 66160, **Kelly Nash** 2001 Murphy Administration Building, 3901 Rainbow Blvd., Kansas City, KS 66160-7101

Injury Suffered: Lost back and front wages and benefits; emotional damages, including: mental anguish, humiliation, embarrassment, and loss of esteem and reputation amongst family, friends, peers, and within the community.

Monetary Damages Requested:

$500,000.00 or maximum amount allowed by law or provided for through any related and applicable insurance coverage.

The information provided herein is based on the most current available information to Claimant and her counsel and related investigation to date and is not intended to be all inclusive. Claimant and her counsel reserve the right to amend, supplement, and/or add to this Notice of Claim at any time in the future should he or his counsel learn or become aware of any additional relevant, probative, and/or material information or evidence.

Thank you for your attention to this matter. Please do not hesitate to contact me if you have any questions or I might be of assistance in any way.

Sincerely,

Kirk D. Holman

CC: Kimberly A. Jones, Seyferth Blumenthal & Harris LLC, 4801 Main St # 310, Kansas City, MO 64112-Via Certified Mail, Return Receipt Requested