IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

DARLENE SANTIAGO-DOTSON, )
                                     )
                Plaintiff,       )
                                     )
      v.                              )       Case No. 2:24-cv-02124-HLT-ADM
                                     )
THE UNIVERSITY OF KANSAS   )
d/b/a THE UNIVERSITY OF        )
KANSAS MEDICAL CENTER,     )
DAVID VRANICAR, and         )
CHARI YOUNG,              )
                                   )
               Defendants.   )

**DEFENDANTS DAVID VRANICAR'S AND CHARI YOUNG'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT AND SUGGESTIONS IN SUPPORT**

      Defendants David Vranicar ("Vranicar") and Chari Young ("Young"), through undersigned counsel, hereby move the court for dismissal of Plaintiff's First Amended Complaint and its sole cause of action against them.  In support of their Motion, Vranicar and Young state:

**I.     NATURE OF THE CASE AND SUMMARY OF ALLEGATIONS**

      Plaintiff is a former Chief of Police for Defendant the University of Kansas Medical Center ("Defendant" or "KUMC"). Plaintiff's First Amended Complaint alleges she was subjected to discrimination by Defendant on the basis of her sex, ancestry, and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), and that Defendant retaliated against Plaintiff for reporting discrimination, also in violation of Title VII. (Doc. 1, Counts Two and Three.)  Plaintiff's discrimination and retaliation claims (*i.e.*, Counts Two and Three) are asserted solely against Defendant KUMC.  (*Id*.)

      Count I of Plaintiff's First Amended Complaint is asserted solely against Vranicar and Young pursuant to 42 U.S.C. § 1983.  (Doc. 1, Count One.)  In relevant part, Plaintiff alleges Vranicar is Defendant's Vice Chancellor for Finance and Chief Financial Officer and was

Plaintiff's direct supervisor at the time Plaintiff's employment was terminated.  (*Id*. at ¶¶6, 50.)[1] Plaintiff alleges Young is Defendant's Vice Chancellor and Chief Human Resources Officer.  (*Id*. at ¶7.)  Plaintiff claims Vranicar and Young were "jointly responsible for all personnel decisions complained of herein" and "were, at all relevant times, individuals acting under color of state law who may be sued in their individual capacities pursuant to 42 U.S.C. § 1983." (*Id*. at ¶¶6-8.)

On or about July 26, 2022, Plaintiff alleges Doug Orbin, an Internal Investigation Specialist for Defendant, determined that Don Holland, a Captain for Defendant, engaged in "sustained deception" during Orbin's internal investigation of an incident involving fentanyl that occurred on or about June 30, 2022.  (*Id*. at ¶¶47-49.)  Based on the information from Orbin, Plaintiff alleges she recommended to Vranicar that Holland be reported to the Kansas Commission on Peace Officers' Standards and Training (KS-CPOST), the authority Plaintiff claims issued Holland's police commission, because Holland had engaged in conduct as a law enforcement officer which Plaintiff reasonably believed to be unlawful.  (*Id*. at ¶50.)

On or about August 10, 2022, Plaintiff alleges she met with Orbin, Vranicar, Young, and another employee regarding Holland and that Vranicar and Young "determined to delay the imposition of discipline on Holland."  (*Id*. at ¶¶51-52.)  On or about August 15, 2022, Plaintiff alleges she again met with Vranicar and Young, who told Plaintiff that she was not required to report Holland to KS-CPOST and such a report to KS-CPOST could be viewed as discriminatory. (*Id*. at ¶61.)  Plaintiff alleges Vranicar and Young instructed Plaintiff not to contact KS-CPOST and further instructed Plaintiff to reprimand Holland for the fentanyl incident.  (*Id*. at ¶62.)

On August 23, 2022, Plaintiff alleges Vranicar and Young placed Plaintiff on paid administrative leave pending review of alleged complaints of mistreatment made by several

---

[1] The factual contentions herein are offered only for purposes of this Motion to Dismiss. Defendants reserve the right to dispute each of Plaintiff's factual contentions.

employees against Plaintiff; cut off her network and email access; and instructed Plaintiff not to communicate with any KU employees regarding the matter. (*Id*. at ¶63.) On or about September 28, 2022, Plaintiff claims Vranicar terminated Plaintiff allegedly due to loss of confidence in her ability to lead the department based on analysis conducted during her leave. (*Id*. at ¶64.)

Count I of Plaintiff's First Amended Complaint specifically alleges the following:

80.     At various times, up to and including September 28, 2022, Plaintiff exercised her rights guaranteed by the First Amendment by speaking out before all of the Defendants upon matters of public concern involving the finding of deception by one of KU's officers and her intention to contact an outside agency, KS-CPOST, regarding the finding.

81.     Defendants, and each of them, acting under color of state law, intentionally, deliberately and knowingly retaliated against Plaintiff for the exercise of rights protected by the First Amendment to the Constitution of the United States, and the guarantees of 42 U.S.C. § 1983.

82.     The acts of Defendants, and each of them, were intentionally designed to deprive Plaintiff of her employment, to violate her constitutional rights, to expose her to public ridicule, and to injure her reputation and character.

(*Id*. at ¶¶89-82.)

## II.    LEGAL STANDARD

This motion is brought pursuant to Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court set forth the standards that courts must use in determining whether dismissal is warranted under Rule 12(b)(6). The Supreme Court held in accordance with Rule 8 of the Federal Rules of Civil Procedure that a complaint need not contain "heightened fact pleading of specifics," 550 U.S. at 570, or "detailed factual allegations," *id*. at 555 (citations omitted), but it must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. The United States Court of Appeals for the Tenth Circuit has stated that *Twombly* imposes a "burden ... on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he ... is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d

1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The allegations [in the complaint] must be enough that, if assumed to be true, ... [Plaintiff] plausibly (not just speculatively) has a claim for relief [against Defendant]." *Id*. (footnote omitted).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[T]he *Twombly/Iqbal* standard recognizes a plaintiff should have at least some relevant information to make the claims plausible on their face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). "[I]t demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678 (citations omitted), and more than "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' ...." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation". *Twombly*, 550 U.S. at 555. Under the *Twombly* standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir.2008) (emphasis in original). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

### III.    ARGUMENTS AND AUTHORITIES

#### A.    Plaintiff Fails to State a 42 U.S.C. § 1983 Claim for "First Amendment" Retaliation.

The Tenth Circuit recognizes that "'[p]ublic employees do not surrender their First Amendment rights by virtue of their employment with the government.'" *Bailey v. Indep. Sch. Dist. No. 69*, 896 F.3d 1176, 1180 (10th Cir. 2018) (quoting *Martin v. City of Del City*, 179 F.3d 882, 886 (10th Cir. 1999)). "A 'government employer cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'" *Id*. (quoting *Burns v. Bd. of Cnty. Comm'rs*, 330 F.3d 1275, 1285 (10th Cir. 2003)).  But the Tenth Circuit also recognizes that "'the government has important interests in maintaining an efficient workplace and promoting the services that it renders,'" and so, "'the government has an increased degree of discretion in regulating a public employee's speech.'"  *Id*. at 1180–81 (quoting *Martin*, 179 F.3d at 886).  While public employees enjoy First Amendment rights, they do not enjoy them to the same extent as a private citizen.  *Seifert v. Unified Gov't of Wyandotte Cty.*, 779 F.3d 1141, 1151 (10th Cir. 2015).

The Tenth Circuit has directed district courts to balance "the interests of public employees in commenting on matters of public concern and the interests of government employers in performing services efficiently" by using the "five-part *Garcetti/Pickering* test."  *Id*. at 1181; *see also Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301–02 (10th Cir. 2009) (first citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006); then citing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)).  This Court has followed suit.  *See Tanksley v. Rice County Sheriff's Office*, Case No. 19-1342-DDC-TJJ, 2021 WL 1210280 at **9-15 (D. Kan. Mar. 31, 2021) (applying five-part *Garcetti/Pickering* to dismiss former deputy's § 1983 claim for "First Amendment Speech Rights" against Sheriff).

Under this analysis, the Court considers:

(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interest, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Helget v. City of Hays*, 844 F.3d 1216, 1221 (10th Cir. 2017) (internal quotation marks omitted); *Dixon*, 553 F.3d at 1302. The first three steps present issues of law to be decided by the court, and the last two generally concern factual issues to be decided by the factfinder. *Id.* at 1222.

The Amended Complaint, viewed in Plaintiff's favor, fails to allege facts capable of supporting a finding or inference that Plaintiff engaged in First Amendment protected speech under the first three elements of the *Garcetti/Pickering* analysis.

### 1. *The statements Plaintiff allegedly made were pursuant to her official duties.*

The first inquiry under the *Garcetti/Pickering* analysis "is whether the employee spoke 'pursuant to [his] official duties.'" *Hesse v. Town of Jackson*, 541 F.3d 1240, 1249 (10th Cir. 2008) (quoting *Garcetti*, 547 U.S. at 421) (other citation omitted). "While 'employees retain the prospect of constitutional protection for their contributions to civic discourse,' they do not have First Amendment protection for statements made 'pursuant to employment responsibilities.'" *Id.* (first quoting *Garcetti*, 547 U.S. at 422; then quoting *id.* at 423–24). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Seifert*, 779 F.3d at 1151. "Thus, 'speech relating to tasks within an employee's uncontested employment responsibilities is not protected from regulation.'" *Hesse*, 541 F.3d at 1249.

The Tenth Circuit takes a "broad" view of the definition of speech that is made "pursuant to" an employee's "official duties." *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008). This approach requires courts to take "a practical view of all the facts and circumstances surrounding the speech and the employment relationship" and "a broad view of the meaning of speech that is pursuant to an employee's official duties." *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010). Although "no one factor is dispositive," our "guiding principle is that speech is made pursuant to official duties if it involves 'the type of activities that the employee was paid to do.'" *Id.* (*quoting Green v. Bd. of Cty. Comm'rs*, 472 F.3d 794, 801 (10th Cir. 2007)).

Speech may also be made pursuant to an employee's official duties even if it deals with activities that the employee is not expressly required to perform. *See Brammer-Hoelter v. Twin Peaks Charter Acad.,* 492 F.3d 1192, 1203 (10th Cir. 2008). So long as the employee's speech "reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties." *Id.* "The ultimate question is whether the employee speaks as a citizen or instead as a government employee—an individual acting 'in his or her professional capacity.'" *Id.* (quoting *Garcetti*, 547 U.S. at 422). Speech directed at an individual or entity within an employee's chain of command is often found to be pursuant to that employee's official duties under *Garcetti/Pickering. See Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 747 (10th Cir. 2010) (holding that the plaintiff's communications with other hospital employees about an alleged staffing crisis, alleged incidents of sub-standard care, and a heart misallocation were all within the scope of plaintiff's official duties).

In *Ellison v. Roosevelt Cty. Bd. of Cty. Comm'rs*, 700 F. App'x 823 (10th Cir. 2017), the plaintiff, a former Sheriff's deputy, sued his former employer on a First Amendment retaliation

theory. The plaintiff in *Ellison* claimed he was terminated for arresting his supervisor's acquaintance, reporting another officer's misconduct, and generally refusing to cover up wrongdoing at the Sheriff's Office. *Id.* at 825. In affirming the district court's dismissal of plaintiff's First Amendment claim on the defendants' 12(b)(6) motion, the Tenth Circuit Court of Appeals stated as follows:

> …we have identified as examples of protected government employee speech "communicating with newspapers or legislators or performing some similar activity afforded citizens." Mr. Ellison did no such thing. Rather, he communicated the alleged misconduct to Sgt. Morrison, who appears to have been a superior officer and who in turn stated he would bring it up with [Lt.] Sanchez. These allegations indicate that Mr. Ellison's report of employment-related misconduct went straight up the chain of command, which signals that it was unprotected speech made pursuant to his official duties.

*Id*. at 829–30 (quoting *Rohrbough*, 596 F.3d at 746).

Plaintiff's First Amended Complaint alleges Vranicar and Young violated her First Amendment rights when Plaintiff spoke directly to them about concerns surrounding another employee's conduct.  As the Tenth Circuit has explained, "speech directed at an individual or entity within an employee's chain of command is often found to be pursuant to that employee's official duties under *Garcetti/Pickering*." *Rohrbough*, 596 F.3d at 747 (citations omitted). "But an employee's decision to go outside of [his] ordinary chain of command does not necessarily insulate [his] speech." *Id.* Instead, "the proper focus is ultimately still whether the speech 'stemmed from and [was of] the type...that [the employee] was paid to do,' regardless of the exact role of the individual or entity to which the employee has chosen to speak." *Id.* (quoting *Green v. Bd. of Cnty. Comm'rs*, 472 F.3d 794, 798 (10th Cir. 2007).

Plaintiff's allegations in the current case do not test the limits of this framework. Plaintiff *explicitly* alleges Vranicar and Young were "jointly responsible for all personnel decisions complained of herein." (Doc. 1, at ¶¶6-7.)  Plaintiff further concedes Vranicar was her direct

supervisor. (*Id*. at ¶50.)   Moreover, Plaintiff's purported speech addressed issues that are comparable to prior cases, where the Tenth Circuit has upheld a district court's conclusion that the First Amendment was not offended. *See Rohrbough*, 596 F.3d at 750–51 (holding that plaintiff's communications with other hospital employees about an alleged staffing crisis, alleged incidents of sub-standard care, and a heart misallocation "were all within the scope of [plaintiff's] official duties under the first prong of the Garcetti/Pickering analysis"); *see also Ellison*, 700 F. App'x at 829–30 (affirming district court's Fed. R. Civ. P. 12(b)(6) dismissal of a deputy sheriff's First Amendment retaliation claim because his alleged speech—which included a disagreement with a lieutenant about the legality of a traffic stop and his reports about another officer's misconduct— were within the scope of his official duties).   As Chief of Police, Plaintiff's responsibilities necessarily included uncovering and reporting any potentially unlawful practices to her chain of command. And Plaintiff obviously recognized this responsibility by reporting it to Vranicar.

Plaintiff wore her uniform—either literally or figuratively—when she made her statements about a coworker's actions and made them directly up her chain of command. Given the context and subject matter of Plaintiff's statements, the facts alleged establish that Plaintiff was speaking as an employee, not a private citizen.   Accordingly, her alleged speech did not come equipped with the First Amendment protections that attach to private citizens' speech. Plaintiff thus fails to plead a plausible § 1983 claim because she alleges she engaged in speech that was made as part of her official duties.

        2.     ***The statements Plaintiff alleges she made were not matters of public concern.***

Speech reaches matters of public concern "when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the

public." *Lane v. Franks*, 573 U.S. 228, 241 (2014) (*quoting Snyder v. Phelps*, 562 U.S. 443, 453 (2011). "The inquiry turns on the 'content, form, and context' of the speech." *Id.* (*quoting Connick v. Myers*, 461 U.S. 138, 147–48 (1983)).

To satisfy this requirement, Plaintiff must allege facts capable of supporting a finding or inference that her speech "involve[d] a matter of public concern and not merely a personal issue internal to the workplace." *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir. 1995); *see also Morris v. City of Colo. Springs*, 666 F.3d 654, 661 (10th Cir. 2012) ("[S]peech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern.") (citation and internal quotation marks omitted). While statements revealing official impropriety usually involve matters of public concern, the court must consider "the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *See Brammer-Hoelter*, 492 F.3d at 1205. A statement "does not attain the status of public concern simply because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." *Salehpoor v. Shahinpoor,* 358 F.3d 782, 788 (10th Cir. 2004). In short, a public employee's First Amendment right to free speech "'is not a right to transform everyday employment disputes into matters for constitutional litigation.'" *Morris*, 666 F.3d at 663 (quoting *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 399 (2011)).

At first blush, Plaintiff's speech might appear to relate to matters of public concern to the extent they involved alleged misconduct by another officer. Viewed in isolation, the substance of this statement could generate a possibility that it addressed a matter of public concern, but the court **cannot** view the statement in isolation. "Whether an employee's speech addresses a matter of

public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48 (1983).

Here, the Court cannot conclude Plaintiff's First Amended Complaint could support a reasonable finding or inference that the form and content of her statements implicate a matter of public concern. The Supreme Court's holding in *Garcetti* makes clear that a plaintiff's speech deserves First Amendment protection only when "the employee spoke *as a citizen* on a matter of public concern." *Garcetti*, 547 U.S. at 418 (emphasis added). In this case, the form and context of Plaintiff's speech signal that she spoke as a government employee. For instance, she reported her concerns to her supervisor and only within the workplace. She did not speak publicly about alleged public concerns. Even if the *content* of her speech may have amounted to statements involving matters of public concern, the form and context of Plaintiff's conversations with her supervisor and other employees heavily favors a finding that she spoke as a public employee, not a private citizen. Plaintiff's internal grievances regarding another employee, which were made at work and privately, are not protected by the First Amendment.

Plaintiff thus fails to state a plausible § 1983 claim for this second and independent reason. Her Complaint fails to allege facts capable of supporting a reasonable finding or inference that she was speaking on a matter of public concern.

3.    *As her employer, Defendant's interests in providing an efficient public service outweigh Plaintiff's interests in her speech.*

The third prong of the Circuit's standard requires the court to ask "whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests." *Dixon*, 553 F.3d at 1302. Here, plaintiff's speech reflected nothing more than the order of authority in her office. That is, Plaintiff reported to her direct supervisor the purported misconduct of another employee and, it seems, the course of action

*Plaintiff* desired.  Plaintiff's purported speech thus was little more than an attempt to override Defendant's interests in workplace efficiency as determined by her superior, and "the efficiency of the public service" offered by Defendant. *Id.*

The facts alleged provide no basis for a plausible finding or inference that Plaintiff's free speech interests were so valuable that they outweighed her government employer's interest in workplace efficiency.  These shortcomings negate the third prong of the *Garcetti/Pickering* test and provide a third independent reason to dismiss Plaintiff's claim based on free speech rights.

For the above and foregoing reasons, Plaintiff's § 1983 claim should be dismissed as a matter of law.

**B.    Qualified Immunity Provides Another Independent Reason to Dismiss Plaintiff's 42 U.S.C. § 1983 Claim for "First Amendment" Retaliation.**

A state official sued in his individual capacity for money damages is entitled to qualified immunity unless plaintiff can show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quotation omitted).  Qualified immunity protects public officials performing discretionary functions unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Willis*, 917 F. Supp 2d 1190, 1195 (D. Kan. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Indeed, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law". *Malley v. Briggs*, 475 U. S. 335, 341 (1986).  "The key to this inquiry is the objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken." *Thompson v. City of Kansas City, Mo.*, No. CIV.A. 93-2446-EEO, 1994 WL 544144, at *3 (D. Kan. Sept. 16, 1994), *aff'd in part*, 79 F.3d 1156 (10th Cir. 1996) (citing *Laidley v. McClain* 914 F.2d 1386, 1394 (10th Cir.1990)).

The qualified immunity defense may be raised by a Rule 12(b)(6) motion to dismiss, and "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996). Once a qualified immunity defense is asserted, the burden shifts to the plaintiff to meet a two-part test. *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Green v. Post,* 574 F.3d 1294, 1300 (10th Cir. 2009.) First, a plaintiff must establish that the defendant violated a constitutional right. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). If the plaintiff fails to satisfy this initial requirement, the court's inquiry ends. *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.") (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, if the plaintiff establishes that a constitutional right was violated, then the plaintiff must also show that the violated right was clearly established. *Cortez*, 478 F.3d at 1114. Whether the right was clearly established is examined under the "specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation. *Long v. Fulmer*, 545 F. App'x 757, 761 (10th Cir. 2013). Thus, if reasonable officials would not have been aware of the clearly unlawful nature of their actions, qualified immunity applies and dismissal is appropriate.

In addition, for a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." *Cortez*, 478 F.3d at 1114-15 (citing *Medina v. City of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). This does not require a plaintiff to cite

a case holding that the specific conduct at issue is unlawful, but rather plaintiff must show that the unlawfulness of the action was apparent. *Jones v. Hunt*, 410 F.3d 1221, 1229 (10th Cir. 2005). There is a presumption in favor of qualified immunity for public officials acting in their individual capacities, unless the plaintiff proves otherwise. *See Hidahl v. Gilpin County Dep't of Soc. Servs.*, 938 F.2d 1150, 1155 (10th Cir. 1991). When it is debatable whether a violation has occurred, the law, by definition, cannot be clearly established, and qualified immunity applies. *See Reichle*, 132 S. Ct. at 2096 (quoting *Wilson v. Layne*, 526 U.S. 603, 618 (1999)).

As discussed in detail above, even construing Plaintiff's allegations in her favor, she spoke (1) as a government employee, (2) on matters that were not of public concern, (3) in a job-related capacity, and (4) only to individuals within her alleged chain of command. The context of Plaintiff's complaints does not support a viable First Amendment violation. Further, given the authority in the Tenth Circuit finding statements made at work to a plaintiff's supervisor – even where such statements concern the misconduct of co-workers – are within the plaintiff's official duties and not matters of public concern, it is impossible to conclude that this Plaintiff's allegations are sufficient to prove a violation of any clearly established First Amendment right. *See Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 747 (10th Cir. 2010); *see also Ellison v. Roosevelt Cty. Bd. of Cty. Comm'rs*, 700 F. App'x 823 (10th Cir. 2017).

In the absence of a plausible claim for violation of the First Amendment, Vranicar and Young are entitled to qualified immunity against Plaintiff's § 1983 claim.

## IV.    CONCLUSION

Plaintiff's First Amended Complaint fails to state a claim upon which relief may be granted against Defendants Vranicar and Young. For the reasons set forth above, Defendants Vranicar and

Young ask the Court to dismiss Plaintiff's claim against them, with prejudice, and any other relief

the Court deems just and equitable.

Respectfully submitted,

SEYFERTH BLUMENTHAL & HARRIS LLC

*/s/ Daniel O. Ramón*
Kimberly A. Jones, KS Bar #16684
Daniel O. Ramón, KS Bar #78699
4801 Main Street, Suite 300
Kansas City, Missouri 64112
Telephone:    (816) 756-0700
Facsimile:     (816) 756-3700
Email:  kim@sbhlaw.com
          danny@sbhlaw.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2024, I electronically filed the foregoing with the Clerk of the Court using the eFiling System which sent notification of such filing to the following:

Kirk D. Holman, KS #19558
Aiman Dvorak, KS #78873
**Holman Schiavone, LLC**
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: (816) 283-8738
Facsimile:  (816) 283-8739
kholman@hslawllc.com
advorak@hslawllc.com

and

Andrew H. McCue, KS #25317
**The Accurso Law Firm**
4646 Roanoke Parkway
Kansas City, Missouri 64112
Telephone: (816) 561-3900
Facsimile:  (816) 561-2992
amccue@accursolaw.com

**Attorneys for Plaintiff**

*/s/ Daniel O. Ramón*
***Attorney for Defendant***